Kim D. Stephens, OSB #030635
Cecily C. Jordan
Kaleigh N. Boyd
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600

Daniel O. Herrera
Nickolas J. Hagman
Mohammed A. Rathur
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Additional attorney signature blocks listed below*

*Attorneys for Plaintiffs and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### (PORTLAND DIVISON)

| | |
|---|---|
| LISA UNSWORTH, MICHAEL RAMONE, CHRISTOPHER POTTER, THERESE COOPER, and CHARLES SANDERSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LEWIS AND CLARK COLLEGE <br><br> Defendant. | Case No.: **3:24-cv-00614-SB** <br><br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## I.    INTRODUCTION

Plaintiffs Lisa Unsworth, Dr. Michael Ramone, Christopher Potter, Therese Cooper, and Charles Sanderson (collectively, "Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement as set forth in the Settlement Agreement[1] attached to the Declaration of Nickolas J. Hagman in Support of Motion for Preliminary Approval of Class Action Settlement ("Hagman Decl."). Defendant Lewis and Clark College ("Defendant") does not oppose certification of the Settlement Class solely for purposes of facilitating the settlement sought to be approved in this motion. As described below, Plaintiffs strongly believe the Settlement, which establishes a $500,000.00 non-reversionary common fund settlement, is fair, reasonable, and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

## II.    STATEMENT OF FACTS

This is a putative class action arising out of a data security incident of Defendant's information systems and databases (the "Data Breach"). *See* First Amended Complaint ("FAC") ¶ 3. During the Data Breach, cybercriminals accessed or acquired Plaintiffs' and Class Members' Personal Information including their names, dates of birth, Social Security numbers, driver's license or state identification numbers, passports, medical and health insurance information, and financial account numbers and financial account routing numbers (collectively, "Private Information"). *Id.* ¶¶ 2–3. In April 2024, Defendant issued notice of the Data Breach to impacted individuals, totaling approximately 48,799 proposed Class Members. *Id.* ¶ 4.

Plaintiffs filed a Class Action Complaint (ECF No. 1) on April 10, 2024, on behalf of all persons whose Private Information may have been compromised, alleging claims based on

---

[1] Unless otherwise indicated, all capitalized terms used herein have the same meaning as those used in the Settlement Agreement. *See* Hagman Decl., Ex. 1.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Defendant's failure to: (i) adequately protect Private Information; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that Defendant failed to comply with industry standards and FTC Guidelines, amounting to negligence and violations of federal and state statutes. Plaintiffs and Class Members allege that they suffered injury as a result of Defendant's conduct. These injuries include: (i) the continued and increased risk of identity theft and fraud; (ii) the loss of time to mitigate the risk of identity theft and fraud; (iii) the diminution of value of their Private Information; and (iv) the future cost of credit and identity theft monitoring. On June 28, 2024, Plaintiffs filed the operative FAC (ECF No. 12), which added Plaintiffs Charles Sanderson, Dr. Michael Ramone, Christopher Potter, and Therese Cooper. The Amended Complaint alleges three separate classes: (i) all persons in the United States whose Private Information was accessed in the Data Breach (*id*. ¶ 110); (ii) all persons who are residents in the State of Oregon whose Private Information was accessed in the Data Breach (¶ 111); and (iii) all persons who are residents in the State of Washington whose Private Information was accessed in the Data Breach (¶ 112). The Complaint also alleges the following causes of action: negligence, negligence *per se*, breach of implied contract, unjust enrichment, intrusion upon seclusion, violations of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.638), and violations of the Washington Consumer Protection Act (RCW 19.86.020). Defendant denies all claims and contentions alleged against it.

Cognizant of the risks associated with protracted litigation, the Parties agreed to explore resolution via mediation with respected-mediator Bruce Friedman. Following an intense, full-day mediation, and as a result of a mediator's proposal, the Parties were able to reach the Settlement Agreement currently before the Court. It provides excellent and timely benefits to the Settlement

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Class and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## III.    PROCEDURAL HISTORY

Following the filing of the FAC, the Parties agreed to explore the potential for early resolution of this matter. The Parties exchanged informal discovery and, through this process, were able to evaluate the collective strengths and weaknesses of their positions. On September 23, 2024, the parties participated in a formal mediation moderated by Bruce A. Friedman of JAMS ("Mr. Friedman"). The mediation was hotly contested and was resolved through only Mr. Friedman's extensive efforts and mediator's proposal. *See* Hagman Decl. ¶ 7.

Following the mediation, the Parties spent several weeks drafting the Settlement Agreement and negotiating the details of the settlement terms and exhibits ("Hagman Decl.), ¶ 8. Additionally, Plaintiffs' counsel solicited and reviewed competitive bids for notice and claims administration. *Id*. Finally, Plaintiffs' counsel drafted this motion for preliminary approval and the supporting declaration. *Id*. Ultimately, the Settlement accomplishes what Plaintiffs set out to achieve by initiating this Litigation: it obtains compensation for victims of the Data Breach for the harm incurred as a result of the Data Breach.

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Proposed Settlement will provide substantial relief for the Settlement Class, which is defined as: "all individuals whose Personal Information may have been involved in the Data Breach." Settlement Agreement ("S.A.") ¶ 41. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

### B.     Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class consists of a $500,000.00 non-reversionary common fund settlement from which class members may make a claim for: (1) reimbursement of Out-of-Pocket Losses or Cash Award and (2) credit monitoring.

#### 1.     <u>Documented Out-of-Pocket Losses Reimbursement</u>

The first category of relief provides reimbursement for documented costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Breach. *Id.* ¶ 51. Specifically, this category of reimbursements includes: (i) unreimbursed losses relating to fraud or identity theft; (ii) professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; (iii) costs associated with freezing or unfreezing credit with any credit reporting agency; (iv) credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and (v) miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.*

#### 2.     <u>Cash Award</u>

The second category provides a *pro rata* cash award to Settlement Class Members who submit a valid and timely Claim Form. *Id.* ¶ 52. The amount of the cash award depends on the number of valid claims submitted.

### C.     Settlement Benefits – Credit Monitoring

All Settlement Class Members are eligible to enroll in two (2) years of three-bureau Credit Monitoring Services, regardless of whether the Settlement Class Member submits a claim for

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

reimbursement of Out-of-Pocket Losses or a Cash Award. *Id.* All claimants who timely activate the credit monitoring service will receive it for a period of two (2) years from the date of activation, including daily three-bureau credit monitoring, identity restoration services, and $1 million in identity theft insurance, among other features. *Id.* ¶ 53.

### D.    Pro-Rata Contingencies and Residual Distributions

The Settlement provides for prioritization of distribution of funds to approved claims, starting with Out-of-Pocket Losses, then Credit Monitoring Services, then Cash Awards. *Id.* ¶ 54. Based on the value of approved claims and the amount of the Net Settlement Fund (which is the amount available after payment for notice and claims administration, attorneys' fees and costs, and plaintiff service awards), there may be *pro rata* decreases in the amount of approved claims. *Id.*

### E.    Class Notice and Settlement Administration

Notice will be paid from the Settlement Fund and has been designed to reach the greatest number of Settlement Class Members practicable. *Id.* ¶ 27. Within ten (10) days after the date of the Preliminary Approval Order, Defendant will provide the Settlement Class List to the Settlement Administrator. *Id.* ¶ 62. Within thirty (30) days of the Preliminary Approval Order, a Short Form Notice will be sent to Settlement Class Members via email where applicable, and via U.S. Mail where no email is available. *Id.* ¶ 63(a). A Long Form Notice and Claim Form will be available to Settlement Class Members on the Settlement Website, which will be established as soon as practicable following entry of the Preliminary Approval Order. *Id.* ¶¶ 24, 63(b).

### F.    Attorneys' Fees and Expenses

Upon preliminary approval of the Settlement, and at least 14 days before the Opt-Out and objection deadlines, proposed Class Counsel will file a motion for an award of attorneys' fees and costs not to exceed one-third of the Settlement Fund. *Id.* ¶ 84.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

### G. Service Awards to Named Plaintiffs

Plaintiffs in this case have been crucial to the litigation of this matter, sacrificing their privacy and time and providing important information about the impact of the Data Incident to proposed Settlement Class Counsel. Upon preliminary approval, and along with their motion for an award of attorneys' fees and costs, Class Counsel will seek service award payments not to exceed $2,000 for each of the Class Representatives in recognition for their contributions to the Action, subject to Court approval. *Id.* ¶¶ 37, 82. The Service Award Payments will be made from the Settlement Fund, paid by the Settlement Administrator. *Id.* ¶ 54.

### H. Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "released, acquitted, relinquished, and forever discharged any and all Released Claims against Defendant and its present and former departments or divisions, and any and all of their respective past, present, and future officers, directors, employees, partners, servants, agents, successors, attorneys, advisors, consultants, contractors, vendors, service providers, representatives, insurers, reinsurers, subrogees, and the predecessors, successors, and assigns of any of the foregoing[.]" *Id.* ¶ 79. "Released Claims" are defined as "any and all claims or causes of action of every kind and description, including causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief . . . that the Releasing Parties had, have or may claim now or in the future to have . . . that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action[.]" *Id.* ¶ 34.

1    **V.    THE COURT SHOULD CERTIFY THE PUTATIVE CLASS FOR THE PURPOSE**

2    **OF SETTLEMENT AND PRELIMINARY APPROVE THE SETTLEMENT**

3    Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which

4    court approval is required to finalize a class action settlement. Courts, including those in this

5    Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary

6    approval of the proposed settlement followed by (2) dissemination of court-approved notice to the

7    class and (3) a final fairness hearing at which class members may be heard regarding the settlement

8    and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the

9    settlement. *Manual for Complex Litigation* (Fourth) (2004) § 21.63.

10   Here, Plaintiffs request the Court grant preliminary approval of the proposed Settlement.

11

12   **A.    Rule 23 Class Certification of the Settlement Class is Warranted**

13   Federal courts strongly favor and encourage settlements, particularly in class actions where

14   the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential

15   benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

16   (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where

17   complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002)

18   (citing cases); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) ("The Ninth Circuit

19   adheres to a 'strong judicial policy that favors settlements, particularly where complex class action

20   litigation is concerned.'"). Forcing claims like those at issue here to be handled through individual

21   litigation would unduly tax the court system, require massive expenditures of resources, and would

22   be impracticable given the relatively small value of the claims of the individual class members.

23   Thus, the Settlement provides the best vehicle for Settlement Class Members to receive the relief to

24   which they are entitled in a prompt and efficient manner.

25

26

27                                        - 8 -

28   PLAINTIFFS' UNOPPOSED MOTION FOR
     PRELIMINARY APPROVAL OF CLASS
     ACTION SETTLEMENT

1    The *Manual for Complex Litigation* (Fourth) advises that in cases presented for both

2    preliminary approval and class certification, the "judge should make a preliminary determination

3    that the proposed class satisfies the criteria." *Id.* § 21.632. The court's evaluation of certification in

4    the context of a settlement is somewhat different than in a case that has not yet settled. *Amchem*

5    *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification

6    of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the

7    case management issues inherent in the ascertainable class determination need not be confronted.

8    *See id.* Other certification issues, however, such as "those designed to protect absentees by blocking

9

10   unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class

11   context "for a court asked to certify a settlement class will lack the opportunity, present when a case

12   is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

13   Plaintiffs here seek certification of a Settlement Class consisting of: "all individuals whose

14   Personal Information may have been involved in the Data Breach." S.A. ¶ 41. The Settlement Class

15   contains 48,799 individuals. For the reasons set forth below, the Court should certify the Class for

16

17   settlement purposes and preliminarily approve the Settlement.

18   **1. The Settlement Satisfies Rule 23(a)**

19   Before assessing the Parties' settlement, the Court should first confirm the underlying

20   settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for*

21

22   *Complex Litigation* (Fourth), § 21.632. These requirements are: numerosity, commonality,

23   typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco*

24   *Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

25

26

27                                                    - 9 -

28   PLAINTIFFS' UNOPPOSED MOTION FOR
     PRELIMINARY APPROVAL OF CLASS
     ACTION SETTLEMENT

a. <u>The Settlement Class is sufficiently numerous.</u>

While there is no fixed point at which the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). The proposed Settlement Class, numbering over 48,799 individuals, easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is impracticable, therefore the numerosity prong is satisfied.

b. <u>The Settlement Class satisfies the commonality requirement.</u>

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Hyundai & Kia Fuel Economy Litig*., 926 F.3d 539, 559 (9th Cir. 2019). Thus, common questions include whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class members' Private Information was compromised in the Data Incident; whether Defendant owed a duty to Plaintiffs and Settlement Class members; whether

- 10 -

Defendant breached its duties; and whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class members of the material facts of the Data Incident.

Determining the truth of the common questions will resolve the issues of both the named Plaintiffs and the Settlement Class, therefore the Settlement Class has met the commonality requirement of Rule 23(a).

### c.  Plaintiffs' claims are typical of those of the Settlement Class

Plaintiffs satisfy the typicality requirement of Rule 23 because their claims, which are based on Defendant's alleged failure to protect Plaintiffs' and Settlement Class members' Private Information, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assoc.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Private Information was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Therefore, typicality has been met for the Settlement Class.

### d.  Plaintiffs have and will continue to adequately protect the interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs have no conflicts of interest with other Settlement Class members, they are subject to no unique defenses, and they and their counsel have and will continue to vigorously

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

prosecute this case on behalf of the Settlement Class. Plaintiffs are members of the Settlement Class who experienced the same injuries and seek, like other Settlement Class members, compensation for Defendant's data security shortcomings that led to the Data Breach and caused them injury. As such, their interests and the interests of their counsel are not inconsistent with those of other Settlement Class members.

Further, counsel for Plaintiffs are qualified, experienced, and able to prosecute this litigation. Settlement Class Counsel have a wealth of experience in litigating complex class action lawsuits similar to this one and have extensive knowledge of the applicable law and sufficient resources to commit to the Settlement Class. The experience of Proposed Settlement Class Counsel is more fully set forth in Hagman Decl. ¶¶ 2-4.

### 2.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

Rule 23(b)(3) requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1    particular forum; and (4) the difficulties likely to be encountered in the management of a class

2    action. Fed. R. Civ. P. 23(b)(3).

3        The predominance requirement "tests whether proposed classes are sufficiently cohesive to

4    warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac.

5    and Proc. § 1777, 518–19 (2d ed. 1986)). "If common questions 'present a significant aspect of the

6    case and they can be resolved for all members of the class in a single adjudication,' then 'there is

7    clear justification for handling the dispute on a representative rather than on an individual basis,'

8    and the predominance test is satisfied." *See Hanlon*, 150 F.3d at 1022. To satisfy this requirement,

9    "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck*

10   *& Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

11       Here, the Plaintiffs' claims depend on whether Defendant owed and breached a duty to

12   adequately safeguard their Private Information. This question can be determined, for settlement

13   purposes, using the same evidence for all Settlement Class Members. This is precisely the type of

14   predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v.*

15   *Bouaphakeo*, 577 U.S. 442, 453–54 (2016) ("When one or more of the central issues in the action

16   are common to the class and can be said to predominate, the action may be considered proper under

17   Rule 23(b)(3)" (citation omitted)).

18       Class certification here is also "superior to other available methods for . . . fairly and

19   efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Class-wide resolution is the only

20   practical method of addressing the alleged violations at issue in this case. Adjudicating individual

21   actions here is impractical: the likely recovery for individual class members is small, the technical

22   issues involved are complex, and the required expert testimony and document review is costly. *See*

23   *Just Film*, 847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas*

- 13 -

*Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because Plaintiffs seek to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' and Settlement Class members' claims are the same. Alternatives to a class action are either no recourse for millions of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are millions of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Las Vegas Sands, Inc.*, 244 F.3d at 1163; *Wolin*, 617 F.3d at 1175; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (The class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Settlement Class.

- 14 -

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1

**B.    The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e)**

2

In order for the court to preliminarily approve a class settlement and to direct that notice be

3

sent to class members, the parties must show that the court "will likely be able to (i) approve the

4

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

5

Fed. R. Civ. P. 23(e)(1)(B). *Tuttle v. Audiophile Music Direct Inc.*, No.C22-1081JLR, 2023 WL

6

3318699, at *3 (W.D. Wash. May 9, 2023). Rule 23(e) provides that a proposed class action may be

7

"settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he

8

parties must provide the court with information sufficient to enable it to determine whether to give

9

notice of the proposal to the class." If the parties make a sufficient showing that the Court will

10

likely be able to "approve the proposal" and "certify the class for purposes of judgment on the

11

proposal," "[t]he court must direct notice in a reasonable manner to all class members who would

12

be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and

13

hence preliminary approval should be granted, where the Court "will likely be able to" finally

14

approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

15

As a general matter, preliminary approval is appropriate if the settlement falls within the

16

range of possible approval. *Hunichen v. Antonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL

17

5854964, at *4 (W.D. Wash. Nov. 12, 2021). In sum, "the purpose of the preliminary approval

18

process is to determine whether there is any reason not to notify the class members of the proposed

19

settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.

20

Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture,

21

Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement

22

Class's best interests and fully endorse the Settlement.

23

24

25

26

27

28

- 15 -

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the proposed class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . ."). Here, the relevant factors support the conclusion that the negotiated settlement—overseen by a respected neutral mediator—is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.     The Strength of Plaintiffs' Case

Plaintiffs maintain they have established a strong case for Defendant's liability, such that Defendant had a duty to protect the Private Information of Plaintiffs and the Settlement Class, breached that duty by failing to adequately safeguard it, and caused cognizable harms. *See, e.g., Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) ("[T]ime and money [plaintiff]

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

spent on credit monitoring in response to the Data Breach is cognizable harm to support her negligence claim"); *Krefting v. Kaye-Smith Enter. Inc.*, 2023 WL 4846850 (W.D. Wash. July 28, 2023) (denying motion to dismiss claims for negligence and under the Washington Consumer Protection Act arising out of a data breach); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318 (W.D. Wash. July 20, 2023) (same); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8–15 (S.D.N.Y. Mar. 23, 2021) (upholding data breach claims for negligence, breach of implied contract, breach of confidence, and violations of New York General Business Law); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) (upholding data sharing claims for violations of Florida Deceptive and Unfair Trade Practices Act).

However, data breach litigation remains uncertain and is still evolving, meaning there is no guarantee that Plaintiffs will prevail on the merits. *See Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc*., 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.")). Plaintiffs recognize that while data breach litigation is turning in their favor as courts observe the concrete impacts that data breaches have, it remains lengthy, complex, and difficult, and the novel claims that they bring do not have certain outcomes. Given these uncertainties, the benefits provided herein favor preliminary approval of the Settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Plaintiffs believe their case is strong, the inherent risks of complex litigation remain present. While nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an uncertain arena. Historically, data breach cases have faced substantial hurdles in surviving even

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar, wide-spread notoriety have been found wanting by trial courts (albeit reversed by appellate courts). *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Although the Plaintiffs are confident that their damages methodologies are sound, the fact remains that the evolving field of data breach class actions leaves uncertainty when these facts are tried to a jury. Without settlement, Plaintiffs may recover nothing for the harms that they have suffered, as each of the risks associated with this form of complex litigation could prevent the case from proceeding. As with all litigation, it is "always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3. The Risk of Maintaining Class Action Status Through Trial

The Court has not yet certified any class treatment of this case, and if Plaintiffs were to proceed to litigate their claims through trial, Defendant will certainly oppose certification. Because of this, the Plaintiffs risk obtaining and maintaining certification of the class and "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiffs are confident that this case is well suited for class certification, numerous obstacles to certification remain. Few data breach cases have proceeded forward to obtain a ruling certifying a contested class. The first to obtain certification was *Smith v. Triad of Ala., LLC*, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and a more recent

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

certified contested class, *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal, *see In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023). The lack of direct precedent adds to the risks posed by continued litigation, therefore, this factor favors approval.

**4.    The Amount Offered in Settlement**

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval, as it makes significant relief available to Settlement Class Members from a $500,000.00 Settlement Fund. Each Class Member may submit a claim for reimbursement of Out-of-Pocket Losses that are fairly traceable to the Data Incident or a *pro rata* Cash Payment. Finally, all Settlement Class Members are eligible to enroll in two years of credit monitoring services, including benefits such as identity restoration services and $1 million in identity theft insurance. This settlement is a strong result for the class, as it helps address Class Members' prior injury while helping them to secure their Private Information. It is also within the realm of reasonable, approved settlements in other data breach cases. *See, e.g.*, Motion for Preliminary Approval of Class Settlement, *Dickey's Barbeque Restaurants, Inc*., No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (79 million people that settled for $115 million); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020) (data breach class action involving more than 194 million people that settled for $117.5 million).

Because of the difficulties that Settlement Class members would face litigating each of their claims individually, not to mention subsequent attempts to collect on those claims, and because this settlement is similar to other settlements reached in similar cases, this factor reflects that the

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Settlement is fair and favors approval. *See Calderon v. Wolf Firm,* 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlements). Therefore, this factor favors approval, as the Settlement is an excellent result.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Even where formal discovery has not been conducted, this factor weighs in favor of approval where, "[p]rior to engaging in settlement negotiations, the parties [] had full understanding of their positions and views of the case, and were able assess the benefits of a potential settlement." *Hanson v. MGM Resorts Int'l*, 2018 WL 3630284, at *5 (W.D. Wash. July 31, 2018). Similarly, where settlement was reached "after several rounds of arm's-length negotiations," approval is warranted. *Id.* Here, Plaintiffs' counsel and Defendant engaged in significant pre-mediation discovery that allowed Plaintiffs' counsel to evaluate the strengths, potential weaknesses, and value of this case, as well as Defendant's ability to pay. Hagman Decl., ¶ 6. Additionally, Plaintiffs' counsel conducted significant investigation into the publicly available facts about the Data Incident and into the Plaintiffs' claims for purposes of drafting the FAC. *Id.* And finally, the Settlement was not reached until after a full day mediation and time spent on negotiations. *Id.* ¶ 7.

### 6.    The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Hagman Decl., ¶¶ 2-4 & Exs. B-D. Having worked on behalf of the putative class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Settlement Class Counsel endorse the Settlement without reservation. *Id.* A great deal of weight is

- 20 -

accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, 2017 WL 1424636, at \*6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

**7.    Governmental Participants**

There is no governmental participant in this matter. This factor is neutral.

**8.    The Reaction of the Class Members to the Proposed Settlement**

Because notice has not yet been given, this factor is not yet implicated; however, Plaintiffs support the Settlement. Hagman Decl., ¶ 17.

**9.    Lack of Collusion Among the Parties**

The parties did not reach the Settlement until after a full day mediation presided over by Mr. Friedman. The Settlement was also the result of a mediator's proposal, thus assuaging any concerns of collusion. *See G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at \*13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation marks and citation omitted)); *see also Cohorst v. BRE Props.*, 2011 WL 7061923, at \*12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

**10.    The Settlement Treats Settlement Class Members Equitably**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Following preliminary approval, Class Counsel will file a motion seeking service award payments for Class Representatives for up to $2,500. This payment is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000).

### C.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

- 22 -

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Such notice must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id*.

Following preliminary approval, Defendant will provide the Settlement Class List to the Settlement Administrator, who will in turn disseminate a Short Form Notice to the members of the Settlement Class via email where available and via U.S. Mail where no email is available S.A. ¶ 62; Hagman Decl. ¶¶ 20-34. A Long Form Notice and Claim Form will be made available to Settlement Class Members on the Settlement Website, which will be established by the Settlement Administrator as soon as practicable following entry of the Preliminary Approval order. S.A. ¶ 63; Hagman Decl. ¶¶ 20-34. The Settlement Website will also contain information including the Settlement Agreement, Plaintiffs' Motion for preliminary approval, the Preliminary Approval Order, Plaintiffs' motion for an award of attorneys' fees, costs, and expenses, and/or service awards, the operative complaint, and other important documents like the Court-approved notices. *Id*. The Settlement Website will also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. *Id*.

- 23 -

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

The notice plan ensures that Settlement Class Members' due process rights are amply protected, and it should be approved. *See Hartranft v. TVI, Inc.*, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination . . . constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

### D.    Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint EisnerAmper Gulf Cost, LLC ("EAG") to serve as the Claims Administrator. S.A. ¶ 40. EAG is a well-respected third-party administrator with a trusted and proven track record of supporting class action administrations. *See* Declaration of Jordan Turner Regarding Administration, attached as Exhibit E to the Hagman Decl.

### E.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

- 24 -

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1    Here, proposed Class Counsel have extensive experience prosecuting class actions and other

2  complex cases, and specifically data breach cases. *See* Hagman Dec., ¶¶ 2-4, Exs. B-D (firm

3  resumes). Accordingly, the Court should appoint Kaleigh N. Boyd of Tousley Brain Stephens

4  PLLC, Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel LLP, and Philip J. Krzeski

5  of Chestnut Cambronne PA as Class Counsel.

6

7  **VI.    CONCLUSION**

8    Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class

9  Members with both significant monetary and equitable relief. The Settlement should be approved

10  and Notice should be ordered to issue to the Settlement Class. For all the above reasons, Plaintiffs

11  respectfully request this Court grant Plaintiffs' Motion. A proposed order is submitted herewith.

12

13

14  DATED this 20th day of December, 2024.

15                                         */s/ Kim D. Stephens*
                                           Kim D. Stephens, OSB #030635
16                                         Cecily C. Jordan
                                           Kaleigh N. Boyd
17                                         **TOUSLEY BRAIN STEPHENS PLLC**
                                           1200 Fifth Avenue, Suite 1700
18                                         Seattle, WA 98101
                                           Telephone: (206) 682-5600
19

20                                         Daniel O. Herrera
                                           Nickolas J. Hagman (*pro hac vice*)
21                                         Mohammed A. Rathur
                                           **CAFFERTY CLOBES MERIWETHER**
22                                         **& SPRENGEL LLP**
                                           135 S. LaSalle Suite 3210
23                                         Chicago, Illinois 60603
                                           Telephone: (312) 782-4880
24                                         Fax: (312) 782-4485

25

26

27                                        - 25 -

28  PLAINTIFFS' UNOPPOSED MOTION FOR
    PRELIMINARY APPROVAL OF CLASS
    ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Philip Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S, Ste. 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT