Kim D. Stephens, OSB #030635
Cecily C. Jordan
Kaleigh N. Boyd
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600

Daniel O. Herrera
Nickolas J. Hagman
Mohammed A. Rathur
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Additional attorney signature blocks listed below*

*Attorneys for Plaintiffs and the Proposed Class*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# (PORTLAND DIVISION)

| | |
|---|---|
| LISA UNSWORTH, MICHAEL RAMONE, CHRISTOPHER POTTER, THERESE COOPER, and CHARLES SANDERSON, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br>vs.<br><br>LEWIS & CLARK COLLEGE,<br><br>   Defendant. | Case No.: 3:24-cv-00614-SB<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: June 2, 2025<br>Hearing Time: 9:30 am PST |

I. **INTRODUCTION**

The administration of the Settlement Agreement, to date, has been an overwhelming success. Of the approximately 45,050 individuals in the Settlement Class, only one has opted out and no class member has objected. The Notice process has obtained an excellent result: a claims rate that exceeds 12.1%. The proposed settlement, which provides for an aggregate cap settlement of $500,000, will provide the class with meaningful monetary and non-monetary relief, commensurate with the alleged damages they sustained. Reached through arm's-length negotiations after contested litigation by experienced and well-informed counsel, the Settlement will deliver tangible, immediate benefits to Settlement Class Members, addressing the potential harms of the data breach without protracted and inherently risky litigation.

Plaintiffs Lisa Unsworth, Michael Ramone, Christopher Potter, Therese Cooper, and Charles Sanderson ("Plaintiffs"), by and through their undersigned counsel, respectfully request this Court grant Plaintiffs' Motion for Final Approval of this Class Action Settlement so that Plaintiffs may begin the process of distributing benefits to those members of the Settlement Class who have submitted valid claims. Because the proposed Settlement is fair, reasonable, and adequate, and because it satisfies all the requirements of Rule 23, the Court should finally certify the Settlement Class and grant final approval of the Settlement Agreement.

Plaintiffs' Counsel conferred with Counsel for Defendant Lewis & Clark College ("Defendant"), who indicated it does not oppose final approval of the Settlement Agreement.

II. **INCORPORATION BY REFERENCE**

Plaintiffs incorporate their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") (ECF No. 27) and Motion for Attorneys' Fees, Costs, and Service Award ("Motion for Attorneys' Fees") (ECF No. 34) by reference. For a

detailed summary of facts, Plaintiffs refer the Court to their Motion for Preliminary Approval, which describes Plaintiffs' investigation into the matter and Consolidated Amended Complaint (ECF No. 12), the Parties' exchange of informal discovery, mediation, and the negotiations that led to the Settlement Agreement currently before the Court for final approval.

### III. THE SETTLEMENT TERMS

Briefly summarized, the Settlement Agreement establishes a $500,000 Settlement Fund from which Settlement Class Members may claim reimbursement for ordinary Out-of-Pocket Losses or receive a Cash Award, along with the option of two years of three-bureau credit monitoring. S.A. ¶ 51–54. The Settlement Fund will also cover Notice and Settlement Administration costs, as well as any awarded attorneys' fees, costs, and Service Awards. S.A. ¶¶ 72, 82, 84.

### IV. THE NOTICE PROGRAM HAS BEEN SUCCESSFULLY IMPLEMENTED

As directed by this Court's Preliminary Approval Order, the Parties worked diligently to implement the Notice Plan in coordination with the approved Claims Administrator EisnerAmper, LLP ("EisnerAmper"). Using records provided by Defendant, EisnerAmper fully implemented the comprehensive notice program consisting of direct-mail Postcard notice, a tear off claim form, a website, and a toll-free number. As detailed below and in the Declaration of Jordan Turner in connection with Final Approval of Settlement (Admin Decl."), submitted herewith as **Exhibit 1**, that notice plan is now complete, and the results have been overwhelmingly successful.

#### A. Class Action Notice Program

On January 15, 2025, the Court entered its order preliminarily approving the Settlement Agreement and the appointment of EisnerAmper as Settlement Administrator. Admin Decl. ¶ 4.

After the Court's preliminary approval of the Settlement, EisnerAmper began to implement and coordinate the Notice Program. *Id.* EisnerAmper maintains a database of 45,050 Settlement Class Members, which it used to effectuate the Notice campaign as outlined within the Settlement Agreement. *Id.* ¶ 7. EisnerAmper received the class data from Defendant's Counsel ("Settlement Class List") on January 21, 2025, in one Excel file with a total of 45,057 records. *Id.* The Excel file contained the full name and address of Settlement Class Members. *Id.* EisnerAmper de-duplicated the data records provided based on name and address and determined that the Settlement Class List consisted of 45,050 unique Settlement Class Members to which Notice should be issued as outlined within the Settlement Agreement. *Id.*

EisnerAmper coordinated and caused the Short-Form Notice in the form of a postcard to be mailed via First-Class Mail ("Postcard Notice") to Settlement Class Members for which a mailing address was available from the class data. *Id.* ¶ 8. The Postcard Notice included (a) a "tear-off" Claim Form with prepaid return postage, (b) the web address to the case website for access to additional information, (c) a description of the rights and options as a Settlement Class Member and the dates by which to act on those options, and (d) the date of the Final Approval Hearing. *Id.* The Notice mailing commenced on or before February 14, 2025, in accordance with the Preliminary Approval Order. *Id.* Prior to the mailing, all mailing addresses were checked against the National Change of Address (NCOA) database maintained by the United States Postal Service ("USPS"). *Id.* ¶ 8.

In the initial mailing campaign, EisnerAmper executed mailings to 44,863 Settlement Class Members that passed address validation. EisnerAmper executed skip tracing on the 187 records that did not pass address validation, and it was able to mail Postcard Notice to an additional 124 Settlement Class Members. *Id.* ¶ 10. EisnerAmper also executed supplemental

mailings for 10,004 Settlement Class Members for which the initial Postcard Notice was not deliverable but for which EisnerAmper was able to obtain an alternative mailing address through either (1) forwarding addresses provided by the USPS, (2) skip trace searches using a third-party vendor database, or (3) requests received directly from Settlement Class Members. *Id*. In accordance with the Settlement Agreement, EisnerAmper commenced mailing Reminder Notices on May 1, 2025, to 40,436 Settlement Class Members who had not yet submitted a Claim Form and passed address validation. *Id*. ¶ 11.

As part of the notice program, EisnerAmper maintained a Post Office Box for the Settlement Program. *Id*. ¶ 12. On February 14, 2025, EisnerAmper published the Settlement Website, www.LCDatatSettlement.com. *Id*. ¶ 13. Visitors to the Settlement Website can download the Long-Form Notice, the Claim Form, and Court Documents, such as the Class Action Complaint, the Consolidated Amended Complaint, the Settlement Agreement, Motions filed by Class Counsel, Orders of the Court, and other relevant documents. *Id*. Visitors are also able to submit claims electronically, find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Settlement Administrator. *Id*. As of May 12, 2025, the Settlement Website received 5,317 unique visits. *Id*.

On February 14, 2025, EisnerAmper established a dedicated toll-free telephone number, 1-844-543-5481 (the "Toll-Free Number"), which is available twenty-four hours per day. *Id*. ¶ 14. Settlement Class Members can call and interact with an interactive voice response system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id*. EisnerAmper also provided copies of the Long-Form Notice, paper Claim Form, as well as the Settlement Agreement, upon request to Settlement Class Members, through the Toll-Free Number. *Id*. The Toll-Free Number appeared in all Notices, as

well as in multiple locations on the Settlement Website. *Id*. The Toll-Free Number will remain active through the close of this Settlement Program. *Id*. EisnerAmper established an Email address, info@LCDataSettlement.com, to provide an additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support. *Id*. ¶ 15.

### B. The Notice Program Was Effective and the Class's Reaction is Overwhelmingly Positive

Through the Notice procedures outlined above, as of May 12, 2025, the Notice Program reached a total of 41,879 (93.0%) Settlement Class Members. *Id*. ¶ 16. The online claim submission feature was available beginning February 14, 2025. *Id*. ¶17. As of May 19, 2025, EisnerAmper has received a total of 5,939 claims submissions. Of these, EisnerAmper has determined that 5,860 claims (approximately 13.0 % of the Settlement Class Members) are from Settlement Class Members and are non-duplicative claims. *Id*. EisnerAmper will continue to intake and analyze claims postmarked by the claims filing deadline of May 15, 2025. *Id*. Assuming Class Counsel is awarded their requested fees, case expenses, and service awards, the cash award (less administrative costs) is currently estimated to be $34.76. *Id*., ¶ 17. As of May 19, 2025, EisnerAmper has received only one (1) exclusion request and no objections. *Id*., ¶¶ 18–19.

### V.   LEGAL ARGUMENT

Plaintiffs respectfully request that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been

fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

### A. The Settlement Continues to Merit Certification

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval and provisionally certified the Settlement Class. *See* ECF No. 28. Here, the Court's Preliminary Approval Order made specific findings that the Class met each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* Likewise, the Court found that the Settlement Class meets each of the Rule 23(b)(3) requirements: that questions of law and fact common to the members of the class predominate over any "questions affecting only individual class members" and that a class action is superior to other available methods of fairly and efficiently adjudicating this controversy. *Id*. Plaintiffs respectfully submit that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class the Court need not revisit class certification here. *Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. #54 (W.D. Wash. Feb. 5, 2019); *Ewing v. Admin. Sys., Inc.*, C08-0797 RAJ, 2009 WL 10725426, at *1 (W.D. Wash. Sept. 30, 2009); *see also Jamil v. Workforce Res., LLC*, 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

### B. Notice Satisfies Due Process

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice

to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. Here, as noted above, EisnerAmper estimates that the notice reached 93.0% of the Settlement Class.

The claims rate here is outstanding at 12.1%. While low claims rates in the data breach context are not usual,[1] the response rate here is a significant multiplier of what is considered a "good" response rate. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving claims rate of .83%); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488, 2015 WL 12731932, at *27 (C.D. Cal. Mat 14, 2015) (approving settlement with "response rate of less than 1%").

---

[1] *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 at *3 (D. Neb. Aug. 21, 2024) (finding parties' efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims). "A response rate is relevant only secondarily to the examination of the notice that was provided in the context of the possible forms of notice reasonably available." *Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476, 497, *review denied sub nom. Barnes v. Sea Mar Cmty. Health Centers*, 549 P.3d 112 (2024) (response rate of approximately 0.5 percent was sufficient where notice plan used known email and postal address as well as the use of a settlement website, toll free phone number, and Facebook and Instagram posts).

The Court already provisionally approved the Notice Plan proposed by Plaintiffs and Class Counsel, including the forms of Plaintiffs' Summary Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiffs' proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

Plaintiffs' implementation of that Notice Plan was successful in all aspects. The Notice Program as designed and implemented reached approximately 93% of the identified Settlement Class. Admin. Decl. ¶ 15. That figure far exceeds the constitutional due process requirement in this Circuit. *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (citation omitted). Finally, all forms of notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available.

The current claims rate (12.1%) is recognized as excellent within the 9th Circuit in the data breach context. *See, e.g.*, *Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with 0.65% claims rate).

The Court should therefore find that the Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process requirements.

C.  **The Settlement Should be Finally Approved Pursuant to Rule 23(e)**

To approve the settlement of a class action as fair, reasonable, and adequate, Rule 23(e)(2) requires the Court to consider "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors—the so-called *Churchill* factors—including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy considerations and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The Ninth Circuit has instructed that the court's 23(e)(2) analysis should be guided by the *Churchill* factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

### D. Class Counsel and Class Representatives Have Adequately Represented the Settlement

Plaintiffs and Class Counsel have represented the Class adequately in connection with both the litigation and the Settlement. Plaintiffs have claims that are typical of, and coextensive with, those of the Class, and they have no interests that are antagonistic to other members of the Class. *See Hanlon*, 150 F.3d at 1020. Indeed, the Plaintiffs share the primary goal with the Class of obtaining the largest possible recovery from Defendant. Class Counsel diligently represented

the Class throughout the course of this complex and hard-fought litigation. Class Counsel, who are experienced in representing plaintiffs in class action and data privacy cases, have spent nearly two years litigating this case and advocating for the Class. As a result of their efforts, the Settlement provides considerable monetary relief to participating Settlement Class members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

### E. The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations Before an Experienced Mediator

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). When approving a settlement prior to class certification, the Court is required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

The Settlement here was the result of arm's-length negotiations conducted under the guidance of skilled mediator Mr. Bruce Friedman. *See* Mot. for Preliminary Approval at 4. The fact that the parties reached the Settlement with the assistance of a neutral mediator is a "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Courts within the Ninth Circuit "have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see also In re Anthem, Inc. Data Breach Litig.*,

327 F.R.D. 299, 327 (N.D. Cal. 2018) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. And, while Class Counsel's fee will be determined separately, as explained in Class Counsel's Motion for Attorneys' Fees, they seek a recovery that is consistent with Ninth Circuit precedent, reflects their work performed, and is proportionate to the total benefit provided. Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324–25 (C.D. Cal. 2016).

### F. The Relief Provided in Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case

In Plaintiffs' Motion for Preliminary Approval Plaintiffs provided an in-depth discussion regarding the fairness and adequacy of the Settlement. *See* ECF No. 27 at 15–22. In granting preliminary approval to the Settlement, this Court agreed, holding that the relief provided to the class under the settlement is adequate, particularly when considering the costs, risks, and delay associated with proceeding to trial and potential appeal. *See id.* at 17–19. Here, evaluating the risks of continued litigation against the scope of relief this Settlement provides to the Class, the Settlement merits final approval, as well.

#### 1. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

This Settlement is excellent not only because of the valuable benefits obtained for the Settlement Class (both monetary and non-monetary), but also because Plaintiffs would have

faced significant risks in litigating this case through trial. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class in an uncertain and ever-developing area of the law. Some data breach cases have faced hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Moreover, to Class Counsel's knowledge, no data breach class action has ever been tried, let alone resulted in a final judgment in favor of a class.

Each of these risks poses a risk that Settlement Class Members recover nothing at all. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Thus, this factor favors approval.

### 2. The Risk of Maintaining Class Action Status Through Trial

If this case were to proceed forward in adversarial litigation, Plaintiffs would face the additional risk of maintaining class certification through trial because Defendant would fiercely oppose class certification. Assuming Plaintiffs were able to proceed forward after obtaining a ruling certifying a contested class, they would still face risks and delays in maintaining and litigating their class claims. The Ninth Circuit recognizes the inherent risk that a district court "may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even

if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."). Moreover, even if Plaintiffs were successful in obtaining class certification and winning trial in the district court, the risk of one or more lengthy appeals would be high. All the while, any relief to Settlement Class Members would remain in limbo and be delayed. Accordingly, the risk and uncertainty surrounding certification of the Class also supports approval of the Settlement.

### 3. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. As discussed above, the Settlement makes significant relief available to Settlement Class Members in the form of reimbursement for Out-of-Pocket Losses, cash fund payments, and credit monitoring. This Settlement is a strong result for the Class, and as discussed extensively at Preliminary Approval, the amount offered is in line with other settlements in cases involving data breaches of similar scope. The relief offered by the Settlement is also reasonable in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). To this inquiry, Class Counsel references the Motion for Attorneys' Fees for its fee award request.

### 4. The Extent of Discovery Completed and the Stage of Proceedings

Plaintiffs were well informed about the strengths and weaknesses of this case before entering into settlement discussions on behalf of class members. Plaintiffs sought and received informal discovery prior to mediation from Defendant related to the scope of the Data Incident, the merits of Plaintiffs' claims, the potential defenses thereto, the size of the Class, and other issues relating to class certification. Class Counsel was therefore able to draw on their extensive experience in privacy and data protection litigation to efficiently uncover the relevant

information bearing on the critical issues in this case. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This factor, too, supports final approval.

### 5. The Experience and Views of Class Counsel

Class Counsel are experienced class action litigators in the field of data breach and data privacy litigation and recommend the Settlement as being fair, reasonable, and adequate and in the best interests of the Class Members. *See* ECF No. 27 at 20–21. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, NO. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). In light of the complexities of the case and the risks of continuing through further discovery, class certification, summary judgment, trial, and inevitable appeals—not to mention collecting on any judgment—Class Counsel firmly believes that the Settlement represents a favorable resolution of this litigation. "Absent fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *9 (D. Or. Sept. 19, 2018) (internal quotations omitted). Thus,

Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

### 6. Governmental Participants

Notice pursuant to CAFA was issued on January 9, 2025. Admin Decl. ¶ 6. As of this filing, there is no governmental participant in this matter. This factor is neutral.

### 7. The Reaction of Class Members to the Proposed Settlement

The reaction of the Class Members to the Proposed Settlement has been overwhelmingly positive and supports approval. The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191. "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009). Here, *no class members have objected*. *See* 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

As of April 15, 2025, Eisner has received only one valid request for exclusion and no objections. Admin. Decl. ¶ 17. The lack of any objection is a strong indication that the class supports the settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district court "had

discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class opted out and only nine objections were submitted").Accordingly, the Class's supportive reaction to the Settlement favors final approval.

### G. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Likewise, the provision of service awards for the Named Plaintiffs is consistent with the equitable treatment of class members. The requested service awards of $2,000.00 per class representative is reasonable and in line with awards granted in similar cases. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000.00 Service Award is presumptively reasonable in the

Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000.00). Moreover, as the service awards fall in line with the caps on claims for monetary relief in the settlement, there is not a "'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

In sum, the Settlement treats all Class Members equitably relative to each other, and final approval is appropriate.

## VI.     CONCLUSION

For the reasons contained in this memorandum, Plaintiffs respectfully request that the Court grant this motion for final approval of class action settlement as fair, reasonable, and adequate.

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,087 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Date: May 19, 2025                                  Respectfully submitted,

*/s/ Kaleigh N. Boyd*
Kim D. Stephens, P.S., OSB #030635
Cecily C. Jordan
Kaleigh N. Boyd
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600


Daniel O. Herrera
Nickolas J. Hagman
Mohammed A. Rathur
**CAFFERTY CLOBES MERIWETHER**

        **& SPRENGEL LLP**
135 S. LaSalle Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401
Telephone: (612) 767-3613
Fax: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

*Attorneys for Plaintiffs and the Proposed Classes*